

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ASPHALT TRADER LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT SCOTT BEALL and TARYN CAPITAL ENERGY, LLC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 1:17-cv-15-DB<br>Judge Dee Benson |

Before the Court are Defendant Robert Scott Beall's motions for leave to file an amended answer to assert affirmative defenses and for judgment on the pleadings as to Plaintiff's second cause of action. [Dkt. 41, 51]. The motions have been fully briefed and the Court finds oral argument unnecessary. Based on the written arguments of the parties and on the relevant facts and the law, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Asphalt Trader Limited ("Asphalt Trader") is a corporation registered in Liberia. [Dkt. 2]. Defendant Robert Scott Beall ("Beall") resides in Ogden, Utah and is the sole principal, sole member and sole manager of Taryn Capital Energy, LLC ("Taryn"), a Utah limited liability

1

company. [Id.]. On March 29, 2012, Asphalt Trader and Taryn entered into a contract in which Taryn would use Asphalt Trader's tanker ship to transport 69,000 barrels of waste oil from Venezuela to Panama. The Complaint alleges that Taryn breached the contract by failing to lawfully procure and transport the waste oil. As a result, Asphalt Trader alleges that its tanker ship sat empty from April 12, to June 9, 2012, incurring port and bunkering expenses and other damages. On December 7, 2015, an arbitration hearing was held in London, England on Asphalt Trader's claims against Taryn for breach of contract. On February 12, 2016, the arbitrators issued an award in favor of Asphalt Trader and against Taryn providing the following relief:

a. Taryn shall pay forthwith to Asphalt Trader the sum of $1,669,221.64 together with interest thereon at the rate of 5% per annum compounded at three-monthly rests from August 1, 2012 until the date of payment hereunder;

b. Taryn shall bear and pay its own and Asphalt Trader's net recoverable costs of this reference, the latter of which is assessed in the sum of 206,925 British Pounds and that it shall also bear and pay 39,475 British pounds; and

c. Taryn shall pay Asphalt Trader interest on Asphalt Trader's costs of 206,925 British pounds at the rate of 5% per annum compounded at three-monthly intervals from February 12, 2016.

On May 20, 2016, Asphalt Trader moved this Court to confirm the foreign arbitration award and to enter judgment consistent with the same. On December 1, 2016, the Court granted Asphalt Trader's motion for entry of judgment. On December 5, 2016, the Court entered judgment in favor of Asphalt Trader and against Taryn as follows:

a. Taryn shall forthwith pay to Asphalt Trader the sum of $1,669,221.64 together with interest thereon at the rate of 5% per annum compounded every three months from August 1, 2012 until the date of payment hereunder;

b. Taryn shall bear and pay Asphalt Trader Limited's net recoverable costs in the sum of $299,213.55;

c. Taryn shall also bear and pay its portion of the costs of the arbitration totaling $57,080.85;

d. Taryn shall pay Asphalt Trader's interest on Asphalt Trader's costs of $299,213.55 at the rate of 5% per annum compounded every three months from February 12, 2016.

*Asphalt Trader v. Taryn Capital Energy*, Case No. 1:16-cv-54-JNP, Dkt. 17.

After obtaining the arbitrators' award and the judgment, Asphalt Traders sought payment from Taryn, but Taryn has refused to pay any of what has been awarded and has indicated it does not have sufficient assets to pay. The Complaint alleges that "[a]round the time of the Arbitrators' award on February 12, 2016, Taryn's liabilities began to exceed its assets and Taryn was no longer able to pay its debts in the course of its operations." The Complaint alleges that Beall is responsible for all aspects of the day-to-day affairs and running of Taryn, including all commercial, chartering, trading and financial matters.

By this action, Plaintiff seeks to recover against Taryn and its sole principal, manager and member, Beall, on the judgment entered by this Court against Taryn based upon an arbitration award. Dkt. 2 ¶¶10-14. Taryn is a limited liability company managed by Beall, its sole member. *Id.* at ¶99. The Complaint alleges that Taryn made improper distributions to Beall. *Id.* at ¶103.

Plaintiff asserts four claims against Beall and Taryn Capital. The first cause of action asserts on the grounds of alter ego that Beall should be responsible for the debt of Taryn to Plaintiff. The second claim asserts that Taryn Capital made improper LLC distributions to Beall. The third claim for relief contends that Taryn made fraudulent transfers to Beall, and the fourth claim for relief requests an order freezing assets.

Beall moves for dismissal of the second cause of action and for leave to amend his answer to assert defenses associated with the Utah Fraudulent Transfers Act.

## DISCUSSION

### I. MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S SECOND CAUSE OF ACTION FOR IMPROPER DISTRIBUTIONS

Beall moves for dismissal of Plaintiff's improper distributions cause of action on the basis that Plaintiff has no standing to assert the claim. While the Complaint fails to state the legal basis for its claim to recover improper distributions, Plaintiff's responses to Defendants' discovery requests clarify that the legal basis upon which Plaintiff bases his second cause of action is the Limited Liability Company Act ("the Act"), Utah Code § 48-3a-405 which provides,

> [a] limited liability company may not make a distribution . . . if after the distribution: (a) the limited liability company would not be able to pay its debts as they become due in the ordinary course of the limited liability company's activities and affairs; or (b) the limited liability company's assets would be less than the sum of its total liabilities.

Plaintiff's Response to Interrogatory No. 3, Dkt. 38-2.

Beall alleges that this claim fails as a matter of law because creditors have no standing

under the Act to recover distributions. As quoted above, section 48-3a-405 of the Act provides that limited liability companies may not make a distribution to members if the distribution would result in the company's insolvency or inability to pay its debts when due. Section 48-3a-406 of the Act outlines who may enforce claims for improper distributions. This section provides that if a member or a manager of a limited liability company consents to an improper distribution, "the member or manager is personally liable to the limited liability company for the amount of the distribution . . ." Utah Code § 48-3a-406(1). The Act further specifies that "[a] person that receives a distribution knowing that the distribution violated § 48-3a-405 is personally liable to the limited liability company. . . ." *Id.* Beall argues that the plain language of the Act gives only a limited liability company standing to recover improper distributions, and a creditor such as Plaintiff has no such standing.

Plaintiff makes two arguments in response. First, its claim to recover alleged LLC distributions is proper under the trust fund doctrine. Asphalt argues that under the trust fund doctrine, Beall owed Asphalt a fiduciary duty to manage Taryn for the benefit of Asphalt, Taryn's creditor, when Taryn allegedly became insolvent in 2012. Second, Plaintiff argues that the statute would create an absurd result if it failed to grant Asphalt, a creditor, the right to sue for improper distributions.

### A. The Trust Fund Doctrine

Where adopted, the trust fund doctrine provides that a corporation's "directors owe a fiduciary duty to an insolvent corporation's creditors" and "all of the assets of [the] corporation, immediately on its becoming insolvent, become a trust fund for the benefit of all of its creditors."

5

*Tatung Company, Ltd. v. Hsu*, 217 F.Supp.3d 1138, 1192 (C.D.Cal. 2016).

Beall replies that the trust fund doctrine does not apply for three reasons. First, Utah courts have rejected the trust fund doctrine. In *Passow & Sons v. Wetherbee*, 167 P.350 (Utah 1917), the Utah Supreme Court stated that "the 'trust fund' doctrine in this state has been so repeatedly repudiated by the decisions of this court that it may now be regarded as well-settled law that this doctrine will not apply unaided by express statutory enactment." *Id.* at 351. In a more recent decision, the Utah Supreme Court stated that the "trust fund theory does not prevail in this jurisdiction . . ." *Butler v. Wilkinson*, 740 P.2d 1244, 1261 (Utah 1987). The trust fund doctrine's rationale has been widely repudiated. *In re Independent Clearing House Co.*, 77 B.R. 843, 863 (D. Utah 1987).

Second, Beall argues that even if the trust fund doctrine were applicable, Plaintiff fails to plead such a claim. A claim based upon the trust fund doctrine is a claim for breach of fiduciary duty. It is premised upon the assumption that when a corporation is insolvent, the officers and directors "become trustees of the creditors." *FDIC v. Sea Pines Co.*, 692 F.2d 973, 976-77 (4th Cir. 1982); *Tatung Companyy, Ltd., v. Hsu*, 217 F.Supp.3d 1138, 1192 (C.D.Cal. 2016) (under California law, directors of insolvent corporation owe a fiduciary duty to creditors); *PCS Nittrogen, Inc. v. Ross Dev. Corp.*, 126 F.Supp.3d 611 (D.S.C. 2015) (under South Carolina law, recognizing common law fiduciary duties owed by corporate officers and directors to creditors when corporation is insolvent). Here, the Complaint does not plead a claim for breach of fiduciary duty, whether under the trust fund doctrine or otherwise. Nor does Plaintiff identify the trust fund doctrine as a basis for its claims in its interrogatory responses. Plaintiff represented

only that it relies upon section 405 of the LLC Act in seeking to recover wrongful distributions. Beall contends that the trust fund doctrine was presented for the first time in Plaintiff's response brief to this motion. Beall argues that in doing so, Plaintiff attempts to amend its claim while this motion to dismiss is pending to avoid dismissal of its claim. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998)(raising issues for the first time in response to a dispositive motion may be treated as a motion to amend).

Finally, Beall argues that even if Utah were to adopt the trust fund doctrine, the doctrine does not allow a creditor to assert a direct claim for breach of fiduciary duty against management of a company. Rather, the creditor could only assert the claim derivatively on behalf of the company. *North American Catholic Educational Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007)(creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against an insolvent corporation, but must assert the claims derivatively.) Here, Plaintiff does not seek to assert a derivative claim, but rather only pleads direct claims.

Because Utah does not recognize the trust fund doctrine, the Court will not apply it in this action. Even if the trust fund doctrine did apply, the Court finds that Plaintiff did not plead such a cause of action, nor did it assert a derivative claim in its Complaint.

### B. The Plain Language of the Act

Plaintiff opposes Beall's motion arguing that it would be an absurd result if it were not allowed to assert a claim for improper distributions under § 405 of the LLC Act. Beall argues, however, that the result is not absurd because Plaintiff, as Taryn's creditor, has standing to assert a claim under the Utah Fraudulent Transfers Act for recovery of the alleged improper

distributions and the plain language of the LLC Act makes clear that only the LLC, regardless of the number of members it has, has standing to assert a claim under § 405.

> The 'primary objective' of statutory interpretation 'is to ascertain the intent of the legislature.' Since 'the best evidence of the legislature's intent is the plain language of the statute itself,' we look first to the plain language of the statute." In so doing, "we presume that the legislature used each word advisedly." We also "presume that the expression of one [term] should be interpreted as the exclusion of another . . thereby presuming all omissions to be purposeful." When we can ascertain the intent of the legislature from the statutory terms alone, "no other interpretive tools are needed, and our task of statutory construction is typically at tn end.

*Bagley v. Bagley*, 387 P.3d 1000 (Utah 2016).

Here, there is no ambiguity in the language of the LLC Act. The plain language of the Act provides that if a member or a manager of a limited liability company consents to an improper distribution, "the member or manager is personally liable to the limited liability company for the amount of the distribution . . .." Utah Code § 48-3a-406(1). The Act further specifies that "a person that receives a distribution knowing that the distribution violated section 48-3a-405 is personally liable to the limited liability company . . ." § 48-3a-406(3). These provisions grant standing only to the limited liability company to recover improper distributions. The Act also allows members of a LLC to bring derivative claims on behalf of the company provided certain standards are satisfied. See Utah Code § § 48-3a-802-804. Absent from the statute is any right of a creditor to assert either directly or derivatively a claim to recover improper distributions. Under the plain terms of the statute, the Court must presume that the omission of standing for a creditor to bring claims for wrongful distributions under the LLC Act was purposeful, whether the LLC has more than one member or only one member.

Plaintiff argues that the plain reading of the statute renders an absurd result and is

8

demonstrably at odds with the intentions of the drafters of the statute. It argues that the purpose of the statute is to prevent improper distributions and in the case of a single member LLC, the single member would not be liable to anyone but himself for the distributions. The Utah Supreme Court stated,

> Our case law recognizes two different interpretive tools concerning absurdity. The first – the absurd consequences canon – merely resolves an ambiguity by choosing the reading that avoids absurd results. The second – the absurdity doctrine – reforms unambiguous statutory language where the language would lead to an absurd result.
>
> This court has developed a narrow, exacting standard for determining whether to apply the absurdity doctrine and read a statute contrary to its plain meaning. In particular, this court will not apply the absurdity doctrine unless the operation of the plain language . . . is so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner. This standard is satisfied only if the legislature could not have reasonably intended the result.

*Bagley*, 387 P.3d at 1003.

The Court finds that the absurdity doctrine does not apply here. Plaintiff offers no persuasive argument that the legislature's decision that creditors may not sue to recover alleged wrongful distributions under the LLC Act is "so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Bagley* at ¶28. Utah law does not grant a right to a creditor of a corporation and there is no reason to ignore the literal language of the Act and grant such a right to a creditor of an LLC. The express purpose of sections 405 and 406 of the LLC Act is to protect limited liability companies and their members when a company is threatened with insolvency, not creditors.

Utah law provides a different statutory scheme that protects creditors. See Utah

Fraudulent Transfer Act, Utah Code § 25-6-1, et seq.

The Court finds that the plain language of the statute establishes that the provision under which Plaintiff seeks recovery in its second cause of action for improper distribution, provides remedy to the LLC, not to a creditor. Plaintiff, as a creditor, lacks standing to assert the claim, under its plan language, as alleged in its second cause of action and accordingly, that cause of action is hereby dismissed.

## II. MOTION TO AMEND ANSWER TO ASSERT AFFIRMATIVE DEFENSES PURSUANT TO UTAH CODE 25-6-9(6)

Beall moves the Court pursuant to Federal Rule of Civil Procedure 15 for leave to amend his Answer to assert affirmative defenses under the Utah Fraudulent Transfers Act. He asserts that the Complaint does not identify the statutory grounds upon which Plaintiff's fraudulent transfer claim is based nor does it identify any specific transfers. From the discovery responses provided by Plaintiff, it appears that Plaintiff relies on § 25-6-6 of the Utah Fraudulent Transfer Act as the statutory basis for avoidance of transfers to Beall.

Plaintiff opposes the motion arguing that Beall was aware of the facts underlying the Complaint when it was filed in January, 2017 and therefore, his motion to amend his Answer is untimely and, under Federal Rule of Civil Procedure 16(b)(4), good cause does not exist. Plaintiff did not identify in the Complaint the Utah Fraudulent Transfers Act as a basis upon which it is relies for recovery. It did not state the Act as a basis of recovery until it responded to written discovery in February, 2018. Beall filed his motion March 16, 2018.

Plaintiff fails to identify ways it will be prejudiced as the result of the amendment.

The Court finds that because Beall filed this motion once he learned that Plaintiff is

10

relying on the Utah Fraudulent Transfers Act as a basis of recovery in this action, the motion is timely and good cause exists under Rule 15 for Beall to amend his Answer to assert affirmative defenses that would be available to him under the Act.

## CONCLUSION

For the foregoing reasons, Defendant Beall's motion for judgment on the pleadings on Plaintiff's second cause of action as against him is hereby GRANTED and that cause of action against Beall is hereby DISMISSED. Defendant Beall's motion to amend the pleadings to allege defenses under the Utah Fraudulent Transfers Act is hereby GRANTED.

IT IS SO ORDERED.

DATED this 30 day of July, 2018.

_____
Dee Benson
United States District Judge